LAUGHLIN McDONALD
BRYAN SELLS
BRIAN SUTHERLAND
American Civil Liberties
  Union Foundation, Inc.
2600 Marquis One Tower
245 Peachtree Center Avenue
Atlanta, GA  30303
(404) 523-2721

ELIZABETH L. GRIFFING
American Civil Liberties
  Union of Montana
241 East Alder
Missoula, MT 59802
(406) 529-3106

JAMES LEE RUEGAMER
420 North Crawford Avenue
Hardin, Montana 59034
(406) 665-1785

FILED
MISSOULA, MT

2007 JUL 16  PM 12 55

PATRICK E. DUFFY
BY _____
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| CITIZENS EQUAL RIGHTS ALLIANCE, INC. (CERA), MONTANA CITIZENS RIGHTS ALLIANCE (MCRA), CHRISTOPHER KORTLANDER, TERRY A. CODDENS, and DEBORAH WINBURN,<br><br>    Plaintiffs,<br><br>v.<br><br>BRAD JOHNSON, in his official capacity as Secretary of State for the State of Montana; ELAINE GRAVELEY, in her official capacity as Elections and Government Services Division Deputy to the Secretary of State; and CYNDY MAXWELL, in her official capacity as Clerk and recorder for Big Horn County, Montana,<br><br>    Defendants,<br><br>    and,<br><br>TRACIE SMALL, ADA WHITE, SIDNEY W. FITZPATRICK, JR., KENNARD REAL BIRD, and ELVIRA "NELLIE" LITTLE | Case No. 1:07-cv-00074-RFC |

```
LIGHT,                                    )
                                          )
     Defendant-Intervenors.               )
_____)
```

## MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO INTERVENE

I. Introduction

This action was brought by organizational and personal plaintiffs alleging that non-tribal member voters in Big Horn County are denied the equal right to participate in elections in violation of Section 2 of the Voting Rights Act, 42 U.S.C. § 1973, and the Fourteenth and Fifteenth Amendments of the Constitution of the United States.

Applicants Tracie Small, Ada White, Sidney W. Fitzpatrick, Jr., Kennard Real Bird, and Elvira "Nellie" Little Light, are American Indians and residents and voters of Big Horn County, Montana. They seek to intervene as of right and for permissive intervention pursuant to Rule 24(a)(2) and (b)(2), F.R.Civ.P.

II. Intervention As of Right Is Warranted

The courts have broadly and liberally construed Rule 24, F.R.Civ.P., in favor of intervention. See, e.g., Washington State Building & Construction Trades v. Spellman, 684 F.2d 627, 630 (9th Cir. 1982). The reason for the broad construction of Rule 24 is "to avoid multiplicity of suits and settle all related controversies in one action." Clark v. Sandusky, 205 F.2d 915, 919 (7th Cir. 1953).

Rule 24(a)(2) provides:

> Upon timely application anyone shall be permitted to intervene in an action: . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject

2

of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Rule 24(a)(2) thus grants a right to intervene where: (1) the application to intervene is timely; (2) the applicants have an interest relating to the property or transaction which is the subject of the action; (3) the applicants are so situated that disposition of the action may, as a practical matter, impede or impair their ability to protect that interest; and (4) the applicants' interest is not adequately represented by the existing parties to the suit. See Chiles v. Thornburgh, 865 F.2d 1197, 1213 (11th Cir. 1989); Atlantis Development Corporation v. United States, 379 F.2d 818, 825 (5th Cir. 1967). Any doubts concerning the propriety of allowing intervention "should be resolved in favor of the proposed intervenors because it allows the court to resolve all related disputes in a single action." Federal Sav. & Loan v. Falls Chase Special Taxing District, 983 F.2d 211, 216 (11th Cir. 1993). Applicants here meet all parts of the test for intervention of right.

A. The Application for Intervention is Timely

As an initial matter, the application for intervention is timely. The complaint was filed in June 2007, and answers from defendants are due July 17, 2007. No status conference has been held, no discovery has been undertaken, no dispositive orders have been entered in the case, and no trial has been set or held. Granting intervention would not, therefore, cause any delay in the

3

trial of the case nor prejudice the rights of any existing party. See Bossier Parish School Board v. Reno, 157 F.R.D. 133, 135 (D. D.C. 1994) (intervention granted as timely where motion was filed on the same day the court held its first status conference).

The most important factor in determining whether intervention is timely is whether any delay in seeking intervention will prejudice the existing parties to the case. See, e.g., McDonald v. E.J. Lavino Co., 430 F.2d 1065, 1073 (5th Cir. 1970) ("[i]n fact, this may well be the only significant consideration when the proposed intervenor seeks intervention of right").[1] Where intervention will not delay resolution of the litigation, intervention should be allowed. Cummings v. United States, 704 F.2d 437, 441 (9th Cir. 1983) (it was an abuse of discretion for the trial court to deny intervention in the absence of a showing of prejudice to the government); Texas v. United States, 802 F. Supp. 481, 482 n.1 (D. D.C. 1992) (affirming the propriety of granting intervention).

B. Applicants Have a Direct Interest in Elections in Big Horn County

As American Indians protected by the Voting Rights Act and the constitution, and as registered voters who reside in Big Horn County, applicants plainly have a direct, substantial, and legally protectable interest in the "transaction which is the subject of

---

[1] Prejudice should not, of course, be confused with the convenience of the parties. See McDonald v. E.J. Lavino Co., 430 F.2d at 1073 ("mere inconvenience is not in itself a sufficient reason to reject as untimely a motion to intervene as of right"); Clark v. Putnam County, 168 F.3d 458, 462 (11th Cir. 1999) (same).

4

the action," Rule 24(a)(2), i.e., the conduct of elections in Big Horn County. See, e.g., City of Lockhart v. United States, 460 U.S. 125, 129 (1983) (allowing intervention in voting rights case); Clark v. Putnam County, 168 F.3d 458, 462 (11th Cir. 1999) ("black voters had a right to intervene" in action challenging county redistricting); Johnson v. Mortham, 915 F.Supp. 1529, 1536 (D.C. Fla. 1995) (registered voters had "a sufficiently substantial interest to intervene" in a suit challenging congressional redistricting); Baker v. Regional High School District No. 5, 432 F.Supp. 535, 537 (D.Conn. 1977) (residents of school district had an interest in method of electing school board that entitled them to intervene in apportionment challenge); Burton v. Sheheen, 793 F.Supp 1329, 1338 (D. S.C. 1992); Brooks v. State Board of Elections, 838 F.Supp. 601, 604 (S.D. Ga. 1993).

As voters of Big Horn County and tribal members, no individuals or entity could have a greater interest in the subject matter of the litigation than applicants. They are in a special position to provide the Court with a local appraisal of the facts and circumstances involved in the litigation. In County Council of Sumter County v. United States, 555 F.Supp. 694, 697 (D. D.C. 1983), the court allowed African American citizens to intervene in a Section 5 preclearance action in part specifically because of their "local perspective on the current and historical facts at issue."

The Eleventh Circuit, in reversing a district court denial of intervention to county residents in a voting rights case,

5

articulated the substantial, legally protected interests of voters in their election system:

> intervenors sought to vindicate important personal interest in maintaining the election system that governed their exercise of political power . . . As such, they alleged a tangible actual or prospective injury.

Meek v. Metropolitan Dade County, 985 F.2d 1471, 1480 (11th Cir. 1993).

### C. Applicants' Ability to Protect Their Interests Will Be Impaired or Impeded If Intervention is Denied

The outcome of this action may as a legal and practical matter impair or impede applicants' ability to protect their interests. Rule 24(a)(2), F.R.Civ.P. Plaintiffs contend in the alternative "that polling places for federal, state, county, and local district elections cannot be located within [the exterior boundaries of any particular Indian reservation]." Complaint, para. 15. The possible *stare decisis* effect of a decision of the district court granting such relief could frustrate applicants' ability to participate in elections in Big Horn County. Such an effect would be sufficient to satisfy the "impair or impede" standard of Rule 24(a)(2). See United States v. Oregon, 839 F.2d 635, 638 (9th Cir. 1984).

### D. Applicants' Interests Cannot Be Adequately Represented by the Existing Parties

Applicants can satisfy Rule 24(a)(2)'s inadequate representation requirement by showing merely that representation of their interests "'may be' inadequate" and "the burden of making this showing should be treated as 'minimal.'" United Guaranty Residential Insurance Co. v. Philadelphia Sav. Fund, 819 F.2d 473,

6

475 (4th Cir. 1987) (quoting Trbovich v. United Mine Workers of America, 404 U.S. 528, 538 n. 10 (1972)).  See also In re Sierra Club, 945 F.2d 776, 779 (4th Cir. 1991) (same).  Rule 24 "underscores both the burden of those opposing intervention to show the adequacy of the existing representation and the need for a liberal application in favor of permitting intervention." Nuesse v. Camp, 385 F.2d 694, 702 (D.C. Cir. 1967).  See also Smuck v. Hobson, 408 F.2d 175, 181 (D.C. Cir. 1969) (same).

Although state and county election officials and the applicants for intervention may share some objectives with respect to the existing method of elections, that does not mean that state and county election officials interests and applicants' interests are identical or that their approaches to litigation and remedies would be the same.  As City of Lockhart, 460 U.S. at 130, demonstrates, the government and minorities have sometimes disagreed on the proper application of the Voting Rights Act and what constitutes adequate protection of voting rights. See also Blanding v. DuBose, 454 U.S. 393, 398-399 (1982) (minority plaintiffs, but not the United States, appealed and prevailed in the Supreme Court in voting rights case); County Council of Sumter County, 555 F.Supp. 694, 696 (D. D.C. 1983) (United States and minority intervenors took opposite positions regarding the application of Section 2 to Section 5 preclearance).

The Supreme Court has "recognized that when a party to an existing suit is obligated to serve two distinct interests, which, although related, are not identical, another with one of those

7

interests should be entitled to intervene." <u>United Guaranty Residential Insurance</u>, 819 F.2d at 475 (referring to <u>Trbovich</u>, 404 U.S. at 538-539). In <u>Trbovich</u>, the Supreme Court allowed a union member to intervene in an action brought by the Secretary of Labor to set aside union elections for violation of the Labor-Management Reporting and Disclosure Act of 1959, even though the Secretary was broadly charged with protecting the public interest. The Court reasoned that the Secretary of Labor could not adequately represent the union member because the Secretary had a "duty to serve two distinct interests," 404 U.S. at 539, a duty to protect both the public interest and the rights of union members.

In a similar case, the Fourth Circuit allowed an environmental group to intervene as a party defendant in an action where the South Carolina Department of Health and Environmental Control (DHEC) was defending the constitutionality of a state regulation governing the issuance of permits for hazardous waste facilities. The court reasoned that DHEC could not adequately represent the environmental group because "in theory, [DHEC] should represent all of the citizens of the state, including the interests of those citizens who may be . . . proponents of new hazardous waste facilities," <u>In re Sierra Club</u>, 945 F.2d at 780, while the environmental group "on the other hand, appears to represent only a subset of citizens concerned with hazardous waste —those who would prefer that few or no new hazardous waste facilities receive permits." <u>Id</u>.

8

Applicants' interests in this litigation are, in like fashion, sufficiently different from those of state and county officials to justify intervention. The state and the county must represent the interests of its citizenry generally - including the interests of the plaintiffs. Trbovich, 404 U.S. at 538-39; In re Sierra Club, 945 F.2d at 780. Where a party represents such dual interests in litigation, the "test" of whether that party will adequately represent the interests of potential intervenors is "whether each of the dual interests [of the party] may 'always dictate precisely the same approach to the conduct of the litigation.' 404 U.S. 539." United Guaranty Residential Insurance Co., 819 F.2d at 475 (holding that the largest mortgage holder could intervene of right in case brought after collapse of real estate firm because the trustee could not adequately protect the interests of such holder given the trustee's duty to represent all holders with equal vigor). Consequently, even if state and county officials vigorously perform their duty to represent its citizenry, representation of applicants' distinct interests may still be inadequate because the state and county officials must balance the competing interests presented by the proposed intervenors as well as those individuals or entities, like the plaintiffs, who oppose it. While the interests of the state and county officials and applicants may converge on some issues, they may diverge on others.

For other decisions holding that government parties could not adequately represent the interests of a subset of the general public, see Chiles v. Thornburgh, 865 F.2d 1197, 1214-15 (11th Cir.

9

1989) (federal prison detainees' interests may not be adequately represented by county); Dimond v. District of Columbia, 792 F.2d 179, 192 (D.C. Cir. 1986) (private party seeking to protect narrow financial interest allowed to intervene despite presence of government which represented general public interest); Natural Resources Defense Council, Inc. v. United States Environmental Protection Agency, 99 F.R.D. 607, 610 n.5 (D. D.C. 1983) (pesticide manufacturers and industry representatives allowed to intervene even though EPA was a party); New York Public Interest Research Group, Inc. v. Regents of the University of the State of New York, 516 F.2d 350, 352 (2nd Cir. 1975) (pharmacists and pharmacy association allowed to intervene where "there is a likelihood that the pharmacists will make a more vigorous presentation of the economic side of the argument than would" the state Regents); Associated General Contractors of Connecticut, Inc. v. City of New Haven, 130 F.R.D. 4, 11-12 (D. Conn. 1990) (minority contractors allowed to intervene because "its interest in the set-aside is compelling economically and thus distinct from that of the City" ).

The inability of existing state and county defendants adequately to represent the interests of the intervenors is further evident from the fact that an Indian tribe and its members are recognized as being "an independent political community" distinct from the state or county in which it is located. Santa Clara Pueblo v. Martinez, 436 U.S. 49, 72 n.32 (1978). See also United States v. Wheeler, 435 U.S. 313, 322-23 (1978) (Indian tribes have

10

Case 1:07-cv-00074-RFC   Document 17   Filed 07/17/07   Page 11 of 14

"inherent powers of a limited sovereignty which has never been extinguished"); McClanahan v. Arizona State Tax Comm'n, 411 U.S. 164, 173 (1973) (Indian tribes have the power of governance and regulating their internal relations). Given the unique status of Indian tribes and their members, the interests of intervenors and the state and the county may well diverge on issues raised in the complaint, e.g., the right of the tribe to endorse persons for public office, and the conduct of elections at precincts on the reservation.

Indeed, there has been a history of tribal members in Big Horn County taking positions opposite to those of county and state officials on a variety of issues, including voting rights. In Windy Boy v. Big Horn County, 647 F.Supp. 1002 (D.Mont. 1986), for example, tribal members challenged at-large elections for the Big Horn County Commission and a local school board. In ruling for the plaintiffs, the court detailed the long history of past and continuing discrimination against tribal members by state and county governments. See also Montana v. Crow Tribe of Indians, 523 U.S. 696 (1998) (suit by Crow Tribe and United States to recover coal related taxes from the state).

The representation of intervenors' interests by the existing state and county defendants may be inadequate. Trbovich v. United Mine Workers of America, 404 U.S. at 538 n.10. Applicants meet the standards for intervention as of right.
11

III. <u>Permissive Intervention Is Also Appropriate</u>

Even if this Court should determine that applicants do not satisfy the requirements for intervention of right, it should grant permissive intervention under Rules 24(b)(1) and(2). Rule 24(b)(2) also permits intervention upon timely application "when an applicant's claim or defense and the main action have a question of law or fact in common."

Applicants deny that non-tribal member voters in Big Horn County are denied the equal right to participate in elections in violation of Section 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments. Applicants further deny that polling places for federal, state, county, and local district elections cannot, or should not, be located within the exterior boundaries of the Crow Reservation. Applicants' defenses thus share common factual and legal questions with the main action. And as discussed above, intervention is timely and will not "unduly delay or prejudice the adjudication of the rights of the original parties." Rule 24(b)(2).

In <u>Arizona v. California</u>, 460 U.S. 605 (1983), Indian tribes were permitted to intervene in a water rights action between states, despite intervention by the United States on behalf of the tribes. The Court reasoned that "the Indian's participation in litigation critical to their welfare should not be discouraged." <u>Id</u>. at 615. The instant litigation is no less critical to movant's welfare, and accordingly intervention should be granted.

12

## Conclusion

For the above and foregoing reasons, the Court should grant applicants' motion to intervene in this action as party defendants.

Respectfully submitted,

S/Laughlin McDonald

LAUGHLIN McDONALD
BRYAN SELLS
BRIAN SUTHERLAND
American Civil Liberties
  Union Foundation, Inc.
2600 Marquis One Tower
245 Peachtree Center Avenue
Atlanta, GA  30303
(404) 523-2721

ELIZABETH L. GRIFFING
American Civil Liberties
  Union of Montana
241 East Alder
Missoula, MT 59802
(406) 529-3106

S/ James Lee Ruegamer

JAMES LEE RUEGAMER
420 North Crawford Avenue
Hardin, Montana 59034
(406) 665-1785

Attorneys for Applicants

13

CERTIFICATE OF SERVICE

    I hereby certify that, on July 16, 2007, a copy of the foregoing Brief in Support of Motion to Intervene was served on the following persons by means of U.S. Mail, postage prepaid.

Arthur V. Wittich
Wittich Law Firm, P.C.
602 Ferguson Avenue, Ste 5
Bozeman, MT 59718

Stephen C. Bullock
Bullock Law Firm, P.C.
30 West 14th St. Suite 204
P.O. Box 1330
Helena, MT 59624-1330

Anthony Johnstone
Assistant Attorney General
P.O. Box 201401
Helena, MT 59620-1401

_____
Elizabeth L. Griffing
Attorney for Intervenors