## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | | |
|---|---|---|
| CITIZENS EQUAL RIGHTS ALLIANCE, INC. (CERA), MONTANA CITIZENS RIGHTS ALLIANCE (MCRA), CHRISTOPHER KORTLANDER, TERRY A. CODDENS, and DEBORAH WINBURN, | ) ) ) ) ) ) | CV-07-74-BLG-RFC |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | **ORDER** |
| BRAD JOHNSON, in his official capacity as Secretary of State for the State of Montana; ELAINE GRAVELEY, in her Official Capacity as Elections and Government Services Division Deputy to the Secretary of State; and CYNDY MAXWELL, in her Official Capacity as Clerk and Recorder for Big Horn County, Montana, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## BACKGROUND

Defendants have filed two separate motions to dismiss Plaintiffs' Complaint pursuant to

F.R.Civ.P. 12(b)(1) and 12(b)(6), for failure to state a claim upon which relief can be granted.

Plaintiffs oppose Defendants' motions.

1

Plaintiffs filed suit based upon alleged events arising around the 2006 county general election. The Complaint claims violation of Section 2 of the Voting Rights Act, 42 U.S.C. § 1973, deprivation of Plaintiffs' rights guaranteed by the Fourteenth and Fifteenth Amendments to the United States Constitution, and violation of 42 U.S.C. § 1983.

Plaintiffs seek a declaration that the aforementioned statutes and Constitutional provisions were violated, enjoining Defendants "from implementing practices and procedures which have the result of denying non-tribal members an opportunity to participate effectively in the political process on an equal basis with other members of the electorate, or from disparately enforcing election laws to tribal members and non-tribal members," to "[d]eclare that Defendant must regulate all polling places and election related practices to the full extent of the law," and costs and fees.

As a basis for these claims, Plaintiffs' allegations include that Mr. Coddens, serving as a poll watcher, was told by an election judge to leave the polling place after the polls closed, a ballot box or boxes in precincts 5 and 7 were not secured, and that the Commissioner of Political practices received a call from someone representing themselves as a member of the Crow Tribe, stating that she was encouraged to, and had, registered and voted twice under different names in different precincts.

## ANALYSIS

### I.    Legal Standard for a 12(b)(6) Motion to Dismiss

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Rule 12(b)(6) motions are viewed with

disfavor.  *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).  In considering a motion to

dismiss pursuant to Fed.R.Civ.P. 12(b)(6), all allegations of material fact, as well as any

reasonable inferences to be drawn from them, are taken as true and construed in the light most

favorable to the plaintiff.  *Broam,* 320 F.3d at 1028.  However, "conclusory allegations of law and

unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."

*In re Stac Electronic Securities Litigation,* 89 F.3d 1399, 1403 (9th Cir. 1996).

Defendants both argue that Plaintiffs' Complaint must be dismissed for failure to state a

claim upon which relief can be granted because Plaintiffs have not alleged a violation of the

Voting Rights Act in that no standard, practice or procedure has been violated.  Defendants assert

that Plaintiffs allege "garden variety" election discrepancies, neither prohibited by state law, nor

rising to the level of rendering the conduct of the 2006 election fundamentally unfair.

**A.      Have Plaintiffs Failed to State a Claim Under the Voting Rights Act?**

Plaintiffs' claim is based on a number of events occurring immediately prior to and on

Election Day 2006, and does not state a claim under the Voting Rights Act.

Section 2 of the Voting Rights Act, codified at 42 U.S.C. § 1973, provides:

> (a) No voting qualification or prerequisite to voting or standard, practice, or
> procedure shall be imposed or applied by any State or political subdivision in a
> manner which results in a denial or abridgement of the right of any citizen of the
> United States to vote on account of race or color, or in contravention of the
> guarantees set forth in section 1973b(f)(2) of this title, as provided in subsection
> (b) of this section.
>
> (b) A violation of subsection (a) of this section is established if, based on the
> totality of circumstances, it is shown that the political processes leading to
> nomination or election in the State or political subdivision are not equally open to
> participation by members of a class of citizens protected by subsection (a) of this
> section in that its members have less opportunity than other members of the
> electorate to participate in the political process and to elect representatives of their

3

choice. The extent to which members of a protected class have been elected to office in the State or political subdivision is one circumstance which may be considered: *Provided,* That nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population.

This Act addresses permanent and structural barriers, such as the drawing of political districts, which would tend to dilute a minority group's voting strength. *See Windy Boy v. Big Horn County*, 647 F.Supp. 1002 (D.Mont. 1986) (at large voting for Board of Commissioners and school board); *United States v. Blaine County*, 363 F.3d 897 (9th Cir. 2004) (system of staggered at-large elections for County Commissioner); and *Old Person v. Brown*, 312 F.3d 1036 (9th Cir. 2002) (legislative redistricting).

This Act also "prohibits practices, which, while episodic and not involving permanent structural barriers, result in the denial of equal access to any phase of the electoral process for minority group members." *Senate Comm. on the Judiciary, Voting Rights Act Extensions, S. Rep. No. 417,* 97th Cong., 2d Sess. 30 (1982), 1982 U.S.C.C.A.N. 177, 207.  Plaintiffs do not allege any permanent or structural barriers that might dilute their ability to elect representatives of their choice.

"A plaintiff bringing a Section 2 claim must prove that (1) the challenged situation constituted a qualification, prerequisite, standard, practice, or procedure and (2) as a result of the challenged situation, members of a protected class had 'less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.'" *United States v. Jones*, 57 F.3d 1020, 1023 (11th Cir. 1995).

 In *Thornburg v. Gingles*, 478 U.S. 30, 47 (1986), the Supreme Court explained, "The essence of a § 2 claim is that certain electoral law, practice, or structure interacts with social and

historical conditions to cause an inequality in the opportunities enjoyed by black and white voters

to elect their preferred representatives."

Unfortunately for Plaintiff, not every mistake made during an election serves as the

predicate for a Voting Rights Act violation.  The challenged situation must constitute a standard,

practice or procedure.  In *United States v. Jones*, the Eleventh Circuit explained:

> Standard is defined as "something that is established by authority, custom, or general consent as a model or example to be followed." Webster's Third New International Dictionary 2223 (Philip B. Govie, ed. 1986). Practice is defined as the "performance or operation of something," "performance or application habitually engaged in," or "repeated or customary action." *Id.* at 1780.  Procedure is defined as "a particular way of doing or of going about the accomplishment of something." *Id.* at 1807.   Even in light of the Supreme Court's mandate that we construe the Voting Rights Act broadly and consistent with its purpose and historical experience, we nonetheless conclude that the challenged errors did not constitute a Section 2 standard, practice, or procedure.

As applied to this case, the challenged errors – the failure to secure a ballot box or two,

dismissal of a poll watcher after the polls had closed, and an anonymous complaint regarding

repeated registration and voting – do not amount to a standard, practice, or procedure.  These

activities are not models or examples to be followed (standards), they do not appear to be a

habitual application (practice), and it is not a particular way of accomplishing something

(procedure).

Plaintiffs also fail in the relief they seek because they do not make an effort to enjoin an

activity or declare a standard, practice, procedure unlawful.  Plaintiffs seek that the Defendants

follow the standards, practices and procedures already in place.  This does not require relief under

the Voting Rights Act.  Plaintiffs can seek the replacement of the election judge responsible for

the alleged misconduct.  *See* Mont. Code Ann. § 13-4-103.  Any of the Plaintiffs could have

contested the election on the ground of election law violations or illegal voting.  *See*  Mont. Code

Ann. § 13-36-101.  Plaintiff Winburn could have petitioned a court for a recount, and if she had

grounds for believing the election judges violated the law governing vote counts, she would have

been entitled to a presumption of an incorrect count.  *See* Mont. Code Ann. §§ 13-16-301, 13-16-

303.

**B.**      **Have Plaintiffs Failed to State a Claim Under the Fourteenth Amendment?**

Plaintiffs also assert that "Defendants' failure to enforce applicable election laws have been

maintained for the purpose of diluting, minimizing and canceling out non-tribal member voting

strength, depriving the Plaintiffs of their rights secured by the Fifteenth Amendment."

Additionally, "Defendants have disparately enforced applicable election laws to tribal and non-

tribal citizens . . . depriv[ing] the named Plaintiffs of their rights secured by the Fourteenth

Amendment."  As a result of these alleged Constitutional violations, Plaintiffs seek relief under 18

U.S.C. § 1983, and for fees under  § 1988.

Section one of the Fourteenth Amendment, in part, prohibits states from "deny[ing] to any

person within its jurisdiction the equal protection of the laws."  This requires an allegation of

discriminatory intent.  In order for the Equal Protection Clause to be violated in a voting rights

case, the "invidious quality of a law claimed to be racially discriminatory must ultimately be traced

to a racially discriminatory purpose."  *Valladolid v. National City*, 976 F.2d 1293, 1298 (9th Cir.

1992) (citation omitted) (quoting *Washington v. Davis*, 426 U.S. 229, 240 (1976)).

At the complaint stage, "[t]o establish a Fourteenth Amendment claim, the Plaintiffs must not only plead that they lack the equal opportunity to participate in the political process, but must also demonstrate that this inequality results from the [challenged system] and that a racially discriminatory purpose underlies that system." *Osburn v. Cox*, 369 F.3d 1283, 1288 (11th Cir. 2004); *see also Soules v. Kauaians for Nukolii Campaign Committee*, 849 F.2d 1176, 1183-84 (9th Cir. 1988) (Garden variety election irregularities such as lax security and mishandled ballots do not render an election unconstitutionally unfair under the Fourteenth Amendment).

Plaintiffs have failed to plead any facts that could support an assignment of discriminatory intent or racial animus to any of the named Defendants, and certainly have not pleaded even a suggestion that the incident they allege resulted from any discriminatory intent.

**C.      Have Plaintiffs Failed to State a Claim Under the Fifteenth Amendment?**

The Fifteenth Amendment provides: "The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any state on account of race, color, or previous condition of servitude."  A Section 2 vote dilution such as that Plaintiffs claim has never been recognized by the Supreme Court to Violate the Fifteenth Amendment.  *Reno v. Bossier Parish Sch. Bd.*, 528 U.S. 320, 334, n.3 (2000); *Arizona Minority Coalition for Fair Redistricting v. Ariz. Indep. Redistricting Comm'n.*, 366 F.Supp.2d 887, 911 (D.Ariz. 2005). The Fifteenth Amendment protects the right to register and to vote and applies only to practices that directly affect a minority group candidate's access to the ballot.  *Arizona*, 366 F.Supp.2d at 911, *citing Reno*, 528 U.S. at 334, n. 3.

The unconstitutional practices protected by the Fifteenth Amendment are far beyond the incident plead by Plaintiffs.  Plaintiffs do not claim legal candidate restriction nor that they have

7

been denied access to the ballot as a primary or general election candidate.  Plaintiffs have not

alleged that they were prevented from registering to vote or from voting at all.

### CONCLUSION

Based upon the foregoing, **IT IS HEREBY ORDERED** that Defendants' Motions to

Dismiss [*docs. 13 & 14*] are **GRANTED**.  All other pending motions are **MOOT**.  The Clerk of

Court is directed to close the file and notify the parties of the making of this Order.

DATED this 5th day of November, 2007.


_/s/ Richard F. Cebull_____
RICHARD F. CEBULL
U.S. DISTRICT COURT JUDGE